UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BONDS,

   Plaintiff,         Case No. 07-10995

vs.              HONORABLE AVERN COHN
                HONORABLE STEVEN D. PEPE

PAUL PIPER, ELIZABETH TATE,
MARVA MYLES, and BUREAU OF
HEALTH CARE SERVICES,

   Defendants.
_____/

**\*AMENDED\***
**REPORT AND RECOMMENDATION (DKT.# # 12,16)**

  On May 11, 2007, Defendant, Paul Piper, filed a motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. §1997 (Dkt. # 12). A notice to respond to this motion was entered on June 1, 2007 (Dkt. # 15). On June 8, 2007, Defendants, Elizabeth Tate, Marva Myles and the Bureau of Health Care Services (BHCS) filed a motion to dismiss for failure to exhaust administrative remedies and failure to state a claim (Dkt. # 16). A notice to respond to the June 8, 2007, motion was entered on June 12, 2007 (Dkt. # 17). All pretrial matters were referred to the undersigned on May 11, 2007, pursuant to 28 U.S.C. §636(b)(1)(A) and (B) (Dkt. #11). For the reasons indicated below, it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** and Plaintiff's Complaint be dismissed.

**I. BACKGROUND**

  Plaintiff, Timothy Bonds, filed a *pro se* civil rights action pursuant to 42 USC § 1983

1

against Defendants Dr. Paul Piper, Elizabeth Tate, Marva Myles and the Michigan Department of Corrections – Bureau of Health Care Services. Mr. Bonds' claims arose during his incarceration in the Ryan Road Correctional Facility (Dkt. # 1). Plaintiff, who is paralyzed from the chest down, claims that the Defendants denied him adequate medical care in violation of his Eighth and Fourteenth Amendment rights. Mr. Bonds' Complaint was filed on March 8, 2007, and he was paroled on March 27, 2007.

Mr. Bonds alleges that he was required to reuse unsanitary disposable items that led to his acquiring an infection (Dkt. # 1). Plaintiff claims that this indifference to his "medical needs and supplies" occurred on November 1, 2006, when Defendants violated an earlier September 8, 2006, resolution of a Step I grievance between Mr. Bonds and MDOC staff. *Id.* at p. 4.

Mr. Bonds filed two grievances while incarcerated at the RRF (Dkt. # 12, Def. Ex. A). Grievance No. RRF-06-09-0646-12Z, concerned the refusal of adequate chronic care supplies required due to Mr. Bonds being a paraplegic. He noted that when received, they are only for two or three days. Filed on September 6, 2006, the grievance addressed an incident on September 1, 2006. Plaintiff signed off at Step I, of the grievance process, noting that the "issue had been resolved" referring to his being "given a detail to receive medical supplies weekly." *Id.* Mr. Bonds' filed a Step III appeal to this grievance which was denied, on April 26, 2007, because he had "signed-off" at Step I and had failed to filed a Step II grievance.

Grievance No. ARF-05-06-0746-12Z was filed on June 13, 2005. This grievance concerned on-going events beginning on May 16, 2005[1], concerning accommodation to Mr. Bonds' special medical needs including a request for a single cell to perform his bowel program.

---

[1]Dr. Piper's motion to dismiss incorrectly refers to the date at May 16, 2006.

2

Mr. Bonds' Complaint was grieved through Step III where on September 6, 2005, the reviewer determined that "a single cell is not medically indicated" and "grievant is being provided with all the equipment necessary to perform his bowel program." The July 21, 2005, Step III response noted Plaintiff was receiving necessary items for his bowel program and that he could perform it in his cell with a basin and shower chair or in the bathroom. It concluded that "evidence does not support your charge of being denied proper treatment and care. You have been supplied with all the necessary equipment for you bowel program." *Id.*

## II. ANALYSIS

### A. <u>Standard Of Review and Jurisdiction</u>

This Court has federal question jurisdiction over Mr. Bonds' § 1983 claim. 28 U.S.C. § 1331.

Examination of a § 1983 claim requires determining whether two key elements are met: (1) whether there has been a deprivation or violation of a federally protected, right, privilege or immunity and (2) whether the action violated the federally protected right was taken under color of state law. *Gomez v. Toledo,* 446 U.S. 635 (1981).

The Eighth Amendment, which applies to states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Estelle v. Gamble*, 429 U.S. 97 (1976). To sustain an Eighth Amendment claim of cruel and unusual punishment, plaintiff must show that prison officials acted with "deliberate indifference" to serious medical needs. *Id.* Deliberate indifference entails more than 'ordinary lack of due care for the prisoner's interest of safety.' *Farmer v. Brennan*, 511 U.S. 825,

824 (1994). The Court rejected on objective test for determining deliberate indifference and instead imposes subjective test showing that officials "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. at 825.

**1. Exhaustion**

The Prison Litigation Reform Act of 1995 ("PLRA") requires a prisoner to exhaust all administrative remedies before bringing a federal suit regarding prison conditions. 42 U.S.C. § 1997e(a). This requirement applies to all § 1983 claims that fall under "the definition of a 'civil action with respect to prison conditions' as set forth in 18 U.S.C.A. § 3626(g)(2)." *Hartsfield v. Vidor*, 199 F.3d 305, 308 (6th Cir. 1999) (footnote omitted) (applying exhaustion requirement to prisoner's equal protection claim). That section provides:

> the term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison. . . .

18 U.S.C.A. § 3626(g)(2).

Pursuant to § 1997e(a), a prisoner may not bring a civil rights action regarding prison conditions unless administrative remedies have been exhausted. The PLRA provides in pertinent part, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "there is no question that exhaustion is mandatory under the PLAR and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 127 S. Ct. 910, 918-9 (2007). *See*,

4

*Booth v. Churner*, 532 U.S. 731, 736-40, 740 n.5 (2001) "exhaustion requirement must be satisfied, so long as some responsive action is available, even if the relief sought is not available in that grievance process." *See also, Woodford v. Ngo* 126 S. Ct. 2378, 2388 (U.S. 2006), which requires that inmates properly exhaust all administrative processes for resolving grievances.

### B. Factual Analysis

The PLRA "requires prisoners to exhaust prison grievance procedures before filing suit." 42 U.S.C. § 1997e(a), *See Booth v. Churner* 532 U.S. 731, 731 (2001). Such procedures provide prison officials "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones* at 914. The Michigan Department of Corrections has developed a grievance procedure that enables prisoners to submit grievances "regarding alleged violations of policy of procedure." MDOC P.D. 03.02.130 (E). Mr. Bonds followed this procedure when he pursued grievances Nos. RRF-06-09-0646-12Z and ARF-05-06-0746-12Z through Step III.

Defendants argue that Plaintiff did not use the grievance procedure to address the November 1, 2006 incident(s) referred to in his Complaint. The relevant MDOC regulation states that:

> "Within five business days after attempting to resolve a grievable issue with staff, a grievant may send a completed Prisoner/Parolee Grievance form to the Step I Grievance Coordinator designated for the facility, field or other office being grieved." MDOC P.D. 03.02.130 (X).

Plaintiffs last grievance, RRF-06-09-0646-12Z, addressed actions alleged to have taken place on September 1, 2006 This grievance was satisfactorily resolved and "signed-off" by Mr. Bonds on October 2, 2006. Plaintiff did not file any subsequent grievances with the MDOC and never used the grievance procedure to address the November 1, 2006, incident referenced in the Complaint in which Defendants allegedly violated the detail resolving the September grievance. While Plaintiff

may not have realized that this new breach of the resolution was a separate (albeit similar) event requiring a new grievance, it appears his only effort to use the grievance procedure was his failed attempt in April 2007 to file a Step III grievance on his September grievance. It is clear that the Plaintiff did not initiate or exhaust the MDOC's grievance procedures to address the November matters discussed in his Complaint. The Supreme Court in *Woodford* noted

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.

*Woodford*, 126 S. Ct. at 2386.

In the present case Plaintiff thought the problem he had with getting a week's supply of his medical supplies had been resolved pending his grievance process when he got a detail providing weekly supplies. After he suspected that the agreement was not being honored he did not file another grievance about the resolution falling apart. It is precisely this type of problem that the MDOC grievance system likely might have resolved had it been afforded the opportunity by Plaintiff filing a second grievance. Unlike many grievances where a consensual resolution is remote or likely futile, this was not such a case and the policy behind the grievance exhaustion process should have been honored.

Plaintiff did not timely follow the grievance procedures under MDOC's rules over the alleged November 2006 wrongdoing.[2] He no longer can properly exhaust his administrative remedies with respect to these claims as would be required by the Supreme Court's *Woodford* decision. Therefore,

---

[2]MDOC Policy Directive 03.02.130 requires that prisoners must "attempt to resolve the issue with the staff member involved within two days after becoming aware of the grievable issue." MDOC P.D. 03.02.130 (R.). Furthermore, "time limitations shall be adhered to by the grievant and staff in all steps of the grievance process." MDOC P.D. 03.02.130 (U.).

42 U.S.C. §1997e requires that Plaintiff's claims of cruel and unusual punishment be dismissed.

## III. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Defendants' motions be **GRANTED** (Dkt. ## 12, 16).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

Dated: September 14, 2007　　　　　　　　　　　　　　　　s/Steven D. Pepe  
Flint, Michigan　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Christine M. Cambpell, Kimberley A. Koester, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Timothy Bonds #401598, 18625 Winston, Detroit, MI 48219

    s/ James P. Peltier
    Courtroom Deputy Clerk
    U.S. District Court
    600 Church St.
    Flint, MI 48502
    810-341-7850
    pete_peltier@mied.uscourts.gov